#### IN THE UNITED STATES DISTRICT COURT FOR THE
#### NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JAMICA DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 22-cv-2148 |
| v. | ) |
| | ) The Hon. Judge John J. Tharp |
| KAREN YARBROUGH, in her official capacity | ) |
| as COOK COUNTY CLERK and in her individual | ) Magistrate Judge Jeffrey I. Cummings |
| capacity, and the COUNTY OF COOK, ILLINOIS, | ) |
| as indemnitor, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO DISMISS COUNT III OF PLAINTIFF'S COMPLAINT**

NOW COMES Plaintiff, JAMICA DAVIS ("Plaintiff") by and through her attorney, Cass Thomas Casper, Esq., DISPARTI LAW GROUP, P.A., and submits as follows for her Response in Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss Count III of Plaintiff's Complaint ("Motion"). For the following reasons, the Motion should be denied in its entirety.

**NATURE OF THE CASE**

Plaintiff brings a four-count complaint against Defendants based upon Plaintiff's termination from the Cook County Clerk's Office on October 26, 2021, shortly after Plaintiff submitted a Family Medical Leave Act ("FMLA") request. Counts 1 and 2 are FMLA retaliation and interference claims, and Count 3 is an Intentional Infliction of Emotional Distress ("IIED") claim against Defendant Yarbrough in her individual capacity. Dkt. 1, ¶¶24-47, 48-56. Count 4 is an indemnification claim against Cook County, Illinois. Dkt. 1, ¶¶57-59. Defendants move to dismiss the IIED claim against Defendant Yarbrough.

Because case law in Illinois and this judicial district recognizes that IIED claims may be brought against supervisors for extreme and outrageous conduct, Plaintiff IIED claim should be

1

allowed to proceed to a jury and the Motion denied. *See, e.g.*, *Patterson v. Xerox Corp.*, 901 F.Supp.274 (N.D. Ill. 1995); *Weis v. Timnberline Knolls, LLC*, 2011 WL 687137 (N.D. Ill. 2011); *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006). So too, *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 679 (7th Cir. 2009) recognizes that a single termination against a single employee is not a policy decision for purposes of Section 2-201 of the Tort Immunity Act and, therefore, Defendant Yarbrough is not entitled to immunity under the Tort Immunity Act.

## STATEMENT OF FACTS

Plaintiff was employed by the Cook County Clerk as Special Assistant to the Cook County Clerk for Government Affairs until her termination on October 26, 2021. Dkt. 1, ¶8. In February 2021, Plaintiff qualified for, and took a leave, pursuant to the FMLA, returning to work in the middle of March. Dkt. 1, ¶13. On her return, Clerk Yarbrough told her not to take any more leaves. Dkt. 1, ¶15. In October 2021, Plaintiff suffered a slip-and-fall injury and sought an additional leave of absence pursuant to the FMLA to receive treatment. Dkt. 1, ¶18. Plaintiff submitted the paperwork for such leave on or about October 21, 2021, and then received a letter from Deputy Chief Cedric Giles terminating her employment as of October 26, 2021. Dkt. 1, ¶¶19, 22. The letter contained no explanation for her termination. Dkt. 1, ¶22. This termination is blatant and obivous retaliation for Plaintiff's exercise of her rights under the FMLA, and she has brought the instant lawsuit for FMLA retaliation and interference. Dkt. 1, ¶¶24-27. In addition, because the extreme and outrageous nature of this termination, Plaintiff also has brought a claim for intentional infliction of emotional distress against Yarbrough in her individual capacity. Dkt. 1, ¶¶48-56. Defendant has moved to dismiss the IIED claim on two grounds, that Plaintiff fails to adequately state an IIED claim, and that the Tort Immunity Act bars the claim. Dkt. 10, pp.3-6.

**ARGUMENT**

I. **PLAINTIFF SUFFICIENTLY ALLEGES AN INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM.**

This Court should deny Defendant's Motion to Dismiss Claim III because Plaintiff alleges an IIED claim that satisfies each element of the tort action in the State of Illinois. *See McGrath v. Fahey,* 126 Ill. 2d 78, 86, 533 N.E.2d 806, 809 (1988). To prevail on an IIED claim, a plaintiff must demonstrate that "(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that its conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress." *Graham v. Commonwealth Edison Co.*, 318 Ill. App. 3d 736, 745, 742 N.E.2d 858, 866 (2000).

Courts in this district have allowed claims for IIED to proceed against supervisors in the employment context. For example, in *Patterson v. Xerox Corp.*, 901 F.Supp.274 (N.D. Ill. 1995), an employee brought an action against her employer and her supervisor for, *inter alia*, IIED. In that case, the plaintiff was pregnant and needed to walk every hour for five to ten minutes to alleviate back pain, which her supervisor told her she would need to make up or receive no pay for. *Id.* at 275. The same supervisor then undertook a course of harassing actions against the plaintiff, including micromanaging her, following her to the restroom, and grabbing her arm on one occasion. *Id.* at 276. Defendants moved to dismiss the IIED claim against the supervisor claiming that the conduct was insufficiently severe and outrageous. *Id.* at 278. In denying the motion, the Court was moved by the fact that the defendant was plaintiff's direct supervisor, and that the defendant was aware the plaintiff was susceptible to emotional distress due to being pregnant. *Id.* at 279. In this case, Plaintiff has pleaded that Yarbrough was her direct supervisor, had complete control over her working life, and that Plaintiff was seeking leave to deal with

3

medical treatment. Dkt. 1, ¶¶50-51, 52. Plaintiff pleads that an average member of the community would deem Yarbrough's conduct in terminating plaintiff to be outrageous under these circumstances. Dkt. 1, ¶52.

The Court in *Weis v. Timnberline Knolls, LLC*, 2011 WL 687137 (N.D. Ill. 2011) also denied a motion to dismiss an IIED claim the plaintiff brought against a supervisor. The Court in *Weis* was moved by the fact that the supervisor was in a position of power and authority over plaintiff, that the supervisor fired the plaintiff, and that the plaintiff was particularly susceptible to emotional distress because she was pregnant. *Id.* at *6. Such was sufficient for the plaintiff there to state an IIED claim against her supervisor.

The Seventh Circuit Court of Appeals in *Naeem v. McKesson Drug Co.*, 444 F.3d 593 (7th Cir. 2006), affirmed a district court judgment against an employer and manager for IIED. In *Naeem*, the Seventh Circuit recognized that

> Illinois courts have been hesitant to find intentional infliction of emotional distress in the workplace because, "if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action." *Graham v. Commonwealth Edison Co.,* 318 Ill.App.3d 736, 252 Ill.Dec. 320, 742 N.E.2d 858, 867 (2000). Yet, Illinois courts have found extreme and outrageous behavior to exist in the employer/employee context when the employer "clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment." *Honaker v. Smith,* 256 F.3d 477, 491 (7th Cir.2001).

*Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006). The Court in *Naeem* held that a course of micromanaging and hostile conduct by the supervisor to the employee, including public criticism, moving her office, sabotaging the employee's work, and increasing workload due under performance improvement plans were actions "far beyond typical on-the-job disagreements" so as to support an IIED claim. *Id.* at 605-606.

Based on these cases, Plaintiff Davis is on firm legal ground to bring an IIED claim against Clerk Yarbrough. As will now be shown, her Complaint adequately pleads the elements of such a claim and should not be subject to dismissal.

**A. Defendant's conduct was extreme and outrageous.**

Defendant Yarbrough's conduct in terminating Plaintiff was extreme and outrageous in nature. Whether a defendant's conduct is "extreme and outrageous" is an objective standard which takes into account all facts and circumstances of the particular situation. *Graham*, 318 Ill. App. 3d 736, 745 (2000). Illinois law recognizes that the "outrageousness" requirement is more likely satisfied when a defendant has a degree of power or authority over the plaintiff. *See Milton v. Illinois Bell Tel. Co.,* 101 Ill. App. 3d 75, 79 (1981) ("The extreme and outrageous nature of the conduct may arise not so much from what is done as from abuse by the defendant of some relation or position which gives him actual or apparent power to damage the plaintiff's interests."). Conduct is extreme where "the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Kolegas v. Heftel Broad. Corp*., 154 Ill. 2d 1, 20 (1992).

At all times, Defendant Yarbrough's conduct is extreme and outrageous because she was in a position of power and authority over Plaintiff in that Yarbrough was Plaintiff's boss, controlled Plaintiff's job responsibilities and the manner in which Plaintiff's job was performed, and Defendant Yarbrough was at all times aware that Plaintiff was in a position of complete financial dependence on her job with the Cook County Clerk. Dkt. 1, ¶¶50-51. Defendant Yarbrough took advantage of such power and authority over Plaintiff and terminated her for seeking to use FMLA, a gross abuse of power and "outrageous" conduct. Plaintiff has also plead that she was emotionally vulnerable because she was injured and seeking treatment for a bone

fracture and pain in her shoulder as a result of a fall, which is much like the emotionally-vulnerable plaintiffs in *Naeem*, *Weis*, and *Patterson*. Dkt. 1, ¶¶17, 52. Despite that all Plaintiff did was seek time off for medical treatment for these conditions, Clerk Yarbrough just out and fired her for it. It should also be noted that Yarbrough's action is outrageous because she expressly warned Plaintiff not to take any more leaves and then followed through on her admonition and fired Plaintiff, despite the fact that Plaintiff was well-within her rights to take further FMLA in October. Dkt. 1, ¶15. The outrageousness is especially present because Yarbrough's conduct is so brazen, and because she followed through with it, warning her direct subordinate not to take more leaves and then firing her immediately when she even tried. The outrage is further exacerbated by the lack of any reason being given for the termination whatsoever in the termination letter, which is the equivalent of a slap-in-the-Plaintiff's face for trying to take a leave. Dkt, 1, ¶22.

Accordingly, Plaintiff has adequately plead a claim for IIED against Yarbrough and the Motion should be denied, especially because Yarbrough abused her position of power over Plaintiff and because Plaintiff was particular emotionally-vulnerable like the plaintiffs in *Naeem*, *Weis*, and *Patterson*.

### B. Defendant either intended that her conduct should inflict severe emotional distress or knew that there was a high probability that her conduct would cause severe emotional distress.

Defendant Yarbrough knew that by terminating Plaintiff for appropriately using her authorized FMLA leave to seek medical attention, she would be causing Plaintiff extreme emotional distress. Despite working closely with Plaintiff for multiple years and knowing Plaintiff well, Defendant Yarbrough showed a conscious disregard for Plaintiff's medical conditions and her total financial reliance on her job. Dkt. 1, ¶¶50-51. As the rule from *Graham*

6

*v. Commonwealth Edison Co*., 318 Ill. App. 3d 736, 745 (2000) suggests, Defendant Yarbrough knew that Plaintiff was in an especially vulnerable position, as Plaintiff was suffering from a serious medical condition at the time of her termination. *Id.* Defendant Yarbrough's disregard for Plaintiff's particular susceptibility during that time in which she was terminated shows Defendant Yarbrough's intent to inflict severe emotional distress upon Plaintiff. In addition, Plaintiff has plead that Yarbrough knew there was a high probability that terminating Plaintiff would cause emotional distress. Dkt. 1, ¶¶50-51, 53.

### C. Defendant's conduct in fact caused severe emotional distress.

Plaintiff has, in fact, suffered from severe emotional distress as a result of Defendant Yarbrough's conduct. Plaintiff's severe distress has interfered with her daily life, causing her to feel constant angst, anxiety, anger, frustration, humiliation, shame, sadness, and depression. Dkt. 1, ¶55. Defendant Yarbrough's conduct also caused Plaintiff to suffer from trouble sleeping, nightmares and stress dreams, and loss of a normal emotional life and self-respect. Dkt. 1, ¶55. Plaintiff's situation is directly analogous to *Graham v. Commonwealth Edison Co*., 318 Ill. App. 3d 736, 745, 743 (2000), the Appellate Court found a clear showing of actual emotional distress where the plaintiff sought assistance from a psychologist and suffered from stomach pain, lack of sleep, headaches, and stress-related acne. Plaintiff has suffered similar symptoms and struggles as the plaintiff in *Graham*, which should satisfy the third element of Plaintiff's IIED claim. *Id.*

### D. Defendant's Cases Are Distinguishable.

Defendant cites *Welsh v. Commonwealth Edison, Co.*, 306 Ill. App. 3d 148, 154 (1999). *Motion*, pp. 4-5. However, none of the employees in *Welsh* were terminated, but rather they were "demoted, transferred, forced to perform [demeaning tasks], harassed intimidated, and threatened with termination." *Id.* at 154. The *Welsh* dismissal was also based on the fact that that complaint

7

was inadequately pleaded because none of the allegations allowed scrutiny of the severity of distress experienced. That is different from this case where Plaintiff has specifically alleged severe emotional distress, stating, "Plaintiff has, in fact, suffered extreme emotional distress, to include angst, anxiety, anger, frustration, humiliation, trouble sleeping, nightmares and stress dreams, shame, embarrassment, sadness, depression, loss of normal emotional life, loss of self-respect, and self-shame." Dkt. 1, ¶55.

Defendant cites *Gibson v. Chemical Card Services, Corp.*, 157 Ill.App.3d 211 (1st Dist. 1987), but in that case the dismissal was based on the fact that the employer had a legitimate basis to investigate credit card theft and preventing future theft, and really all the defendant did was conduct an internal investigation of plaintiff. *Id.* at 219. Here, Plaintiff was straightforwardly fired for simply having submitted paperwork to go on FMLA leave. There is no legitimate basis for such a course of action, unlike the employer's action in *Gibson* where it had a legitimate reason to investigate and prevent credit card threat. In other words, the supervisor in *Gibson* had a legitimate reason to investigate credit card theft, whereas there was no legitimate reason to terminate Plaintiff here. Accordingly, this case is distinguishable from *Gibson*.

Defendant cites *Balark v. Ethicon, Inc.*, 575 F.Supp. 1227 (N.D. Ill. 1983), but in that case, but in that case the Court dismissed the IIED claim because it merely involved the employer allegedly failing to comply with an arbitrator's decision and because, apart from that, the employer had an entirely separate basis to terminate the plaintiff. The Court there found that disobeying an arbitrator is hardly outrageous conduct. *Id.* at 1231. Accordingly, *Balark* is distinguishable.

Defendant cites *Witkowski v. St. Anne's Hosp. of Chicago, Inc.*, 113 Ill.App.3d 745 (1st Dist. 1983), but in that case the court simply stated that it did not believe the factual allegations

8

were sufficiently "abusive and atrocious transgressions" to ground an IIED claim. *Id.* at 754. Contrary to *Witkowski*, though, another court in *Robertson v. Travelers Insurance Co.*, 100 Ill.App.3d 845 (1981), did find that very similar allegations were sufficient to ground an IIED claim. Accordingly, *Witkowski* is at odds with *Robertson* and the two cases together are not much guidance for this one.

### E. Conclusion.

Plaintiff submits that case law, including *Naeem*, *Weis*, and *Patterson*, all support her claim of IIED against Yarbrough. Plaintiff also submits, though, that discovery is very likely to uncover even more evidence tending to show the outrageousness of this termination, so as to bolster the claim. Plaintiff submits that, especially given her basis in decisional law to bring this claim, she should be allowed discovery on it and the sufficiency of the claim then tested at the summary judgment stage. For example, it is extremely likely that discovery will flesh out communications between Yarbrough and Giles leading to the termination letter that further and strongly support the IIED claim. *See* Dkt. 1, ¶22 (termination letter authored by Giles). Plaintiff cannot access this information without discovery, however. In other words, Plaintiff has stated enough for the IIED claim to get through the gate, and she urges the Court to so find and to let her see what discovery uncovers in further support of the claim.

### II. PLAINTIFF'S IIED CLAIM AGAINST DEFENDANT YARBROUGH IS NOT BARRED BY THE TORT IMMUNITY ACT.

Defendant alleges that Plaintiff's IIED claim against Defendant Yarbrough is barred by the Tort Immunity Act, 745 ILCS 10/1-101 *et seq.*, because Defendant Yarbrough terminating Plaintiff was an exercise of her discretionary authority as a matter of 745 ILCS 10/2-201. Contrary to Defendant's argument, Courts have already recognized that a one-time decision to fire an employee is not a "judgment call between competing interests" for purposes of the

immunity granted by 745 ILCS 10/2-201. *See Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 679 (7th Cir. 2009). Defendant's assertion of immunity is doomed under *Valentino*, which expressly denied such an assertion of immunity as to a single termination. Accordingly, the Motion should be denied on this basis.

### III. LEAVE TO AMEND COMPLAINT SOUGHT IN THE EVENT THE MOTION IS GRANTED.

While Plaintiff submits the Motion should be denied, in the event this Court grants any portion of it, Plaintiff would request leave to file a First Amended Complaint.

### CONCLUSION

For the reasons set forth herein, Plaintiff requests that this Court deny Defendant's Motion in its entirety. Plaintiff requests leave to amend in the event the Court grants any portion of the Motion.

*Electronically Served: July 6, 2022*

                              Respectfully submitted,

                              **JAMICA DAVIS**

                              BY: */s/ Cass T. Casper*
                                        Her Attorney

*Cass T. Casper, Esq.*
DISPARTI LAW GROUP, P.A.
121 West Wacker Drive, Suite 2300
Chicago, Illinois 60601
Phone: (312) 506-5511 ext. 331
Email: ccasper@dispartilaw.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he served the foregoing document on all counsel of record via this Court's CM/ECF Filing System on July 6, 2022, and that such counsels are registered e-filers.

*/s/ Cass T. Casper*